Robert M. Carlson
Daniel L. Snedigar
CORETTE POHLMAN & KEBE
129 West Park Street, Suite 301
P.O. Box 509
Butte, MT  59703-0509
  PH:  (406) 782-5800
 FAX:  (406) 723-8919
Email:  bcarlson@cpklawmt.com
     Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

| | |
|---|---|
| **INTERSTATE MECHANICAL, INC.**, an Oregon corporation,<br><br>        Petitioner,<br><br>v.<br><br>**GLACIER CONSTRUCTION PARTNERS, LLC**, a Montana Limited Liability Company,<br><br>        Respondent. | No. CV-_____<br><br>**BRIEF IN SUPPORT OF PETITION FOR ORDER COMPELLING ARBITRATION** |

     COMES NOW petitioner Interstate Mechanical, Inc. (IMI), and submits this brief in support of its Petition to Compel Arbitration and to stay the pending state court action.  Because the contract from which respondent's claims arose contained a valid arbitration clause and because respondent has refused to submit to arbitration and has, in fact, filed a civil

action in state court in direct violation of its commitment to arbitrate, it is appropriate for this court to hold a hearing regarding the validity of the agreement and respondent's refusal to arbitrate; to grant petitioner's request for order compelling arbitration; and, to stay the pending state court action pending this arbitration.

## FACTUAL BACKGROUND

This dispute relates to work performed by IMI under a subcontract drafted by Glacier Construction Partners, LLC (Glacier), a Montana limited liability corporation, and signed by both parties. This subcontract covered work performed for Glacier for the benefit of Abbey/Land, LLC (Abbey/Land), a Montana limited liability company, that owns real property on Shelter Island on Flathead Lake, located in Lake County, Montana. IMI, an Oregon corporation, was engaged by Glacier in an attempt to remedy deficiencies in the water treatment infrastructure at the Shelter Island property. As part of this work, IMI engaged the services of Siemens Water Systems to design and install the replacement water treatment system.

The subcontract agreement that governed this work was authored by Glacier and signed by both parties. It contained a provision in Article 3.4 which stated that:

> Any controversy or claim arising out of or relating to this Agreement, or the breach hereof, shall be settled by arbitration administered by

the American Arbitration Association in accordance with its Construction Industry Arbitration Rules (the "AAA Rules"). (Exhibit 1 to the Affidavit of Steve Tygart – Exhibit A to the Petition).

IMI entered into a contract dated June 22, 2006, with Glacier Construction Partners (GCP) concerning work on the Abbey Home Project (Main House), Shelter Island, Montana. (Tygart Affidavit, par. 3). IMI was lead to believe that its work on the project would be concluded within 12 months from the above date. (Tygart Affidavit, par. 4).

IMI did its best to perform its obligations under the above contract. IMI performed its duties and obligations under the above contract to the extent that GCP had the project in a position to allow IMI to perform. Even into 2010, GCP did not have the work of other trades coordinated and completed so as to allow IMI to fully perform its contract in a timely manner. (Tygart Affidavit, par. 5).

The terms and conditions of the project kept changing and GCP required several change orders and design changes. GCP was continually changing the project which lead to more than 79 approved change orders and many more still pending. IMI continued to press forward with its work as allowed so as to not cause more delay to the project than was caused by the actions or inaction of GCP. (Tygart Affidavit, par. 6). IMI has now been involved in work on this project for over 3 years and has incurred, for

the benefit of GCP, additional actual costs for materials and labor for which it has not been compensated by GCP. (Tygart Affidavit, par. 7).

In 2009, IMI attempted to resolve informally various issues related to amounts that it is owed on this project. When GCP failed to negotiate in good faith on these issues, IMI on July 17, 2009, invoked the arbitration provision under the contract to seek payment for amounts due it for work on this project. (Tygart Affidavit, Par. 8). The issues raised in the arbitration are for work covered by the contract which totaled over $825,000 and include the following:

    a. Work completed;
    b. General conditions;
    c. Miscellaneous
(Tygart Affidavit, Par. 9)

GCP filed an Answering Statement and Counterclaims in the arbitration proceeding on August 10, 2009. Pre-arbitration proceedings moved forward and an arbitrator was selected. A pre-arbitration conference was scheduled with the arbitrator and counsel on September 24, 2009. (Tygart Affidavit, Pars. 13, 14 & 15).

Despite the presence of the subcontract provision clearly stating that **any** controversy or claim arising out of or relating to the agreement be arbitrated and despite the fact that the arbitration process was initiated on July 17, 2009, on the eve of the arbitration preliminary hearing, Abbey/Land

and GCP filed a civil action in the Montana Eleventh District Court, Flathead County, on September 23, 2009. On October 1, 2009, Abbey/Land and GCP filed a motion to stay the proceedings and decide the issue of arbitration. A hearing was held on the TRO on October 20, 2009, and the court continued the TRO until a determination could be made on whether or not the matter should proceed to arbitration. All other proceedings in the state court action were stayed pending the district court's decision. (Tygart Affidavit, pars. 16, 18, 21). That based on the record on file in the Flathead County Clerk of Court's Office as of this date, no return of service has been filed indicating any other defendants have been served with the Summons and Complaint. (Tygart Affidavit, par. 14).

Briefs were fully submitted to the court on or about December 10, 2009. To date, the Montana District Court has made no determination regarding the validity of the arbitration agreement and IMI's claim remains unresolved. (Tygart Affidavit, Par. 19).

The primary focus of the above lawsuit apparently relates to a water treatment system which was installed at the direction of GCP as a change order to the June 22, 2006, contract. The change order was issued by GCP to IMI in May 2007 for the installation of the water treatment system. In the above lawsuit, GCP and Abbey/Land claim there was a breach of contract

in the installation of the water treatment system and as a result this has caused them to suffer consequential damages which under the contract cannot be awarded in arbitration. IMI denies that it breached the subcontract related to the water treatment system or any other portion of the subcontract or the many change orders issued by IMI. (Tygart Affidavit, par. 15).

The subcontract at issue was prepared and proffered to IMI by GCP. GCP made the decision to limit the damages awardable in arbitration. IMI submits that the issues related to the change order on the water treatment system should be resolved in arbitration. (Tygart Affidavit, par. 16).

On November 24, 2009, GCP issued a suspension of work letter to IMI precluding it from completing its work on the project. (Tygart Affidavit, Par. 20). On March 18, 2010, GCP sent a letter to IMI for the ostensible purpose of terminating the subcontract with IMI. (Tygart Affidavit, Par. 21).

In order to promote an efficient resolution of this dispute, IMI now petitions this court to compel arbitration under the valid agreement and stay the Montana District Court action pending the outcome of said arbitration.

## ARGUMENT

Arbitration agreements are ultimately governed by the Federal Arbitration Act, which is codified at Title 9, Chapter 1 of the U.S. Code.

When a party subject to arbitration under a valid arbitration agreement fails or refuses to arbitrate, 9 U.S.C. § 4 provides a mechanism to compel arbitration. This statute provides, in pertinent part, that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

Case law has interpreted this provision as providing "in 9 U.S.C. § 4 an abbreviated procedure for obtaining specific performance of arbitration agreements." *National RR Passenger Corp. v. Missouri P.R. Co.*, 501 F.2d 423, 427 (8th Cir. 1974).

In a proceeding under 9 U.S.C. § 4, the district court's role is distinctly limited. As stated in *Reconstruction Fin. Corp. v. Harrisons & Crossfield*:

> The provisions of that Act – 9 U.S.C. § 4 – . . . make it clear that a federal court, in a suit asking it to compel arbitration should deal with no issues except (1) the making of an agreement to arbitrate, and (2) the failure, neglect or refusal of the other party to perform that agreement.
> - 204 F.2d 366, 368, 37 A.L.R. 2d 1117 (2nd Cir. 1953), cert. denied 346 U.S. 854, 74 S. Ct. 69, 98 L. Ed. 368.

When examining an arbitration clause for validity, courts have recognized "the emphatic federal policy in favor of arbitral dispute resolution." *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1158

(9th Cir. 2008) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 105 S. Ct. 3346, 87 L. Ed 2d 444 (1985)).  They have recognized the "strong public policy favoring arbitration." *Rogers*, 547 F.3d at 1158-59 (citing *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 726 (9th Cir. 2007).  Other courts have found that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)).

When interpreting broad arbitration clauses, courts applying the framework of the Federal Arbitration Act have found that they are valid and cover the "near limitless boundaries of the arbitration clause which calls for arbitration in "all disputes arising in connection with this contract." *Aberthaw Constr. Co. v. Centere County Hospital*, 366 F. Supp. 513, 514 (M. D. Penn. 1973).

The Montana United States District Court is no stranger to cases invoking arbitration under 9 U.S.C. § 4.  In *Snap-on Tools Corp. v. Vetter*, the court invoked the statute and determined that a valid arbitration agreement exists and the dispute must be arbitrated. 838 F. Supp. 468, 473 (D. Mont. 1993).  Moreover, the court in *Snap-on* granted the

petitioner's motion to stay a similar state action. *Id.* While the court noted that "the stay sought. . . is generally prohibited by the Anti-Injunction Act, 28 U.S.C. § 2283," it also noted that cases like these fall into one of the three exceptions that exist. *Id.* Other, subsequent case law has generally upheld the *Snap-on* holding when applied to cases with a similar procedural history. (see e.g., *Specialty Bakeries, Inc., et. al. v. Robhal, Inc., et. al.*, 961 F. Supp 822, 830 "we enjoin HalRob from proceeding in the New Jersey Superior Court to upset the status quo. . . pending the decision of the arbitrator.")

In the instant case, the entire relationship between petitioner and respondent is based on the subcontract agreement. It established and defined their transaction and without it there would be no controversy. This agreement contains Provision 3.4, which specifies that:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules (the "AAA Rules").

Because there is no basis other than the subcontract agreement for the parties' relationship, **any** dispute arising between IMI and GCP is clearly a "controversy or claim arising out of or relating to" the agreement in question.

Further, respondent has clearly failed, neglected, or refused to arbitrate under the agreement and has chosen rather to attempt to nullify the agreement and its provisions by filing claims in the Montana Eleventh District Court, Flathead County, under cause number DV-09-1198A.

Petitioner has the right under 9 U.S.C. § 4 to compel arbitration and stay the state court action.

## CONCLUSION

In this case, respondent GCP has clearly failed to submit to arbitration "arising out of or relating to" the subcontract containing the valid arbitration clause. Because 9 U.S.C. § 4 provides a clear procedural path for petitioner to seek relief, this court should find that the arbitration agreement is valid and covers the disputes in question and respondent is in breach of the agreement. According to the procedures outlined in 9 U.S.C. § 4, this court should therefore order a hearing, no sooner than five days after service of this petition and brief on respondent to satisfy itself that the making of the arbitration and the failure to comply therewith are not at issue; uphold the validity of the arbitration agreement contained in the subcontract; issue an order to compel arbitration; and, if necessary, stay the state court action DV-09-1198A.

DATED this 15th day of April, 2010.

/s/ Robert M. Carlson
Corette Pohlman & Kebe
Counsel for Petitioner
